IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**QUAUNTEL SAUNDERS,**

        **Petitioner,**

v.                                                      Case No. 2:21-cv-00286

**DONALD AMES,**

        **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Petitioner Quauntel Saunders's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, (ECF No. 1), as well as Respondent's Motion to Dismiss. (ECF No. 8). This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). After thorough consideration of the record, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's Motion to Dismiss, (ECF No. 8); **DISMISS** the Petition for a Writ of Habeas Corpus, (ECF No. 1), and remove this matter from the docket of the Court.

I.    **Relevant Procedural History**

    *A. Saunders's Petition for a Writ of Habeas Corpus*

Saunders is a state prisoner housed at Mount Olive Correctional Complex ("MOCC") to serve sentences arising from multiple violations of West Virginia law. (ECF

1

No. 8-1). On May 10, 2021, Saunders filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1). He challenges MOCC's administrative segregation ("ad seg") process as well as the legality of the prison's Operational Procedure ("O.P.") 324, which details the quality of life ("QOL") program. (*Id.* at 10). He claims that he is being held in ad seg "without meaningful review." (*Id.*).

Under Ground One, Saunders asserts that MOCC's QOL program violates his due process rights. (*Id.* at 11). He stresses that Respondent admits that there are no due process interests attached to the QOL program, seemingly taking this to mean that the program violates his due process rights. (*Id.*). Saunders argues that O.P. 324 allows prison officials to confine him indefinitely without "review," and notes that his classification as a security threat prevents him from progressing in the program enough to leave ad seg. (*Id.* at 11–12). He contends that the program is unconstitutional "as written and as [applied]." (*Id.* at 12). He also challenges the QOL program as violative of other policies at MOCC, and thus discriminates against him, violating his due process and equal protection rights. (*Id.* at 12–14). He claims that use of the QOL program to punish him is "arbitrary, capricious and in excess of Respondent Ames['s] legitimate authority." (*Id.* at 14).

Under Ground Two, Saunders argues that his Fourteenth Amendment due process rights were violated "when he was denied his right to a meaningful Periodic Review" of his ad seg status. (*Id.*). He claims he has received no review since being placed in ad seg, contrary to prison policy and in violation of his due process rights. (*Id.* at 14–15). He asserts that he is entitled to such review at each level of the QOL program. (*Id.* at 15–16).

In Ground Three, Saunders claims that Respondent is violating his constitutional rights by placing him in ad seg without due process protections. (*Id.* at 16). He claims that,

at his hearing before being placed into ad seg, he was not allowed to present the witness he wanted and was told he would receive a letter explaining why, but he received no such letter. (*Id.* at 16–17). He also claims that he was not given an opportunity to appeal his designation to ad seg because there was no neutral detached officer to whom he could appeal. (*Id.* at 17). Likewise, he apparently was not able to use the legal representative of his choice at his hearing. (*Id.*).

Saunders claims that he has a liberty interest in "avoiding [commitment] and confinement to [ad seg] because the conditions in the isolation unit certainly impose an atypical and significant hardship within the correctional context." (*Id.* at 17–18). According to Saunders, in ad seg he is on lockdown between 23 and 24 hours per day, only allowed three showers per week, and recreation is confined to a small "dog cage" approximately the size of a horse stall or parking space which lacks running water. (*Id.* at 18). He states that he is not allowed to have a TV, radio, game console, or basic tennis shoes, is being deprived of programming available to other prisoners, and lacks access to the law library, preventing him from obtaining parole. (*Id.* at 18–19).

Saunders contends that "no other inmates at MOCC, in general population or any other [ad seg] inmate in WV Prison System is required to take the QOL program," and they are not "subjected to the intrusive strip searches on a near daily basis" that he claims to suffer. (*Id.* at 19). He asserts that other prisoners "only can do 6 months" in ad seg, while he "is subjected to at least 15 months with NO maximum amount of time to stay confined to [ad seg]." (*Id.*).

### B. *Respondent's Motion to Dismiss*

On August 11, 2021, Respondent filed a motion to dismiss Saunders's petition along with a memorandum of law in support. (ECF Nos. 8, 9). Therein, he argues first that

Saunders has failed to exhaust his state court remedies, noting that Saunders has brought a "nearly identical claim" in this Court and in the Supreme Court of Appeals of West Virginia ("SCAWV"). (ECF No. 9 at 4–6). Because the SCAWV has not rendered a decision on the issue, Respondent reasons that the petition should be dismissed. (*Id.* at 6).

Respondent also asserts that Saunders's claims concerning the constitutionality of the QOL program are not appropriate in a habeas action as Saunders challenges the conditions, rather than the execution, of his confinement. (*Id.* at 6–8). Respondent further argues that Saunders's placement in ad seg does not violate his right to due process. (*Id.* at 8). Respondent explains the procedure by which prisoners are designated to ad seg and the function of the QOL program, which allows opportunity for prisoners to achieve different levels of privileges based on behavior. (*Id.* at 9–11). Respondent asserts that Saunders's claim fails because he does not have a protected liberty interest in his administrative classification, and he has not alleged or proven that he suffered a deprivation. (*Id.* at 11). Respondent contends that Saunders's designation to ad seg is within the terms of his original sentence and does not trigger due process protections. (*Id.* at 12). Further, even if Saunders had a protected liberty interest, Respondent contends that Saunders was given written notice and a full administrative hearing before being designated to ad seg and his placement there has been reviewed by the Administrative Segregation Committee. (*Id.*).

Respondent disputes Saunders's assertion that he is not given an opportunity to exercise, noting that prison policy provides that exercise can be limited in the interest of security or safety, and reiterating that this type of claim is not suitable for a habeas petition. (*Id.* at 13). Respondent also contends that Saunders had a fair hearing before his assignment to ad seg, emphasizing that Saunders was given forty-eight hours' notice of

4

the hearing, was informed of his right to representation, and was permitted to make a statement on his own behalf, and the committee reviewed all the evidence, including video evidence. (*Id.* at 13–14). Respondent posits that although Saunders did not receive a continuance of his hearing as he requested, he "identifies no clearly established rights that were violated nor any relevant policy guarantees that were not followed." (*Id.* at 15).

On August 30, 2021, Saunders filed a response to Respondent's motion. (ECF No. 12). He counters Respondent's argument that he failed to exhaust his state court remedies, alleging that he has exhausted all available remedies by filing and appealing grievances. (*Id.* at 2). He contends that he could "not appeal in state court because its not a state violation," and cannot file a motion pursuant to 28 U.S.C. § 2254 because his claim is "not based on a criminal conviction." (*Id.*). He also notes that § 2241 does not require exhaustion of state judicial remedies. (*Id.*).

As to the appropriateness of his claims in a § 2241 action, Saunders advances that he is challenging not only the constitutionality of the State's policies, but also challenging "the validity of any confinement and to particulars affecting my duration." (*Id.* at 2–3). He contends that the Court can grant relief by ordering his release and instructing Respondent to follow its policies and end its unconstitutional QOL program. (*Id.* at 3).

Saunders next asserts that while placement in ad seg alone does not violate his right to due process, the QOL program and prison policy "[t]hat's ran together with [ad seg] violates [his] constitutional right to due process." (*Id.*). Saunders disputes Respondent's characterization of prison policy and maintains that it violates his due process rights. (*Id.*). He also disputes Respondent's representation of the exercise opportunities afforded him in ad seg, claiming the recreation cage is much smaller and less ventilated than Respondent described and that conditions are unsanitary. (*Id.* at 4).

5

Saunders claims that his rights are being violated because his original sentence was prolonged when he was denied parole due to being designated to ad seg. (*Id.*). He also provides that he has never been reviewed by the Administrative Segregation Committee and any such review took place outside his presence. (*Id.*). He contradicts Respondent's assertion that he is in the QOL program because of assaulting an inmate, instead proclaiming that he is being used as a scapegoat for an incident where a prisoner was murdered. (*Id.* at 5). He asserts that he did not get a fair hearing because he was not able to call witnesses or present evidence and was not allowed to use the representative that he requested. (*Id.*). He asks the Court not to dismiss his petition and repeats his request for relief. (*Id.* at 5–6).

On September 7, 2021, Respondent filed a reply to Saunders's response. (ECF No. 13). He refutes Saunders's assertion that he cannot raise his federal constitutional claim in state court, noting that Saunders has filed a petition in the SCAWV that is nearly identical to the instant case with the same factual issues. (*Id.* at 1). He counters Saunders's assertion that prison policies are "made up," contending that the policies have the same force as policy directives. (*Id.* at 2). Respondent again notes that Saunders's conditions of confinement claims cannot be raised in a habeas petition and must instead be brought in a civil rights lawsuit. (*Id.*). He also insists that Saunders's status in the QOL program is regularly reviewed, and his physical presence during such review is not required. (*Id.*). Because Saunders did not provide any evidence to support his claims, Respondent again asks that the petition be dismissed. (*Id.* at 3).

### C. *Other pending and resolved legal matters*

Saunders is no stranger to litigation. Since 2018, Saunders has filed ten civil actions in this Court—eight civil rights lawsuits under § 1983 and two habeas petitions

under § 2241 including the instant petition—challenging various aspects of his incarceration at MOCC. Seven such actions remain pending. While the majority of these actions raise issues unrelated to those presented in the instant petition, in at least one case Saunders challenges his designation to ad seg and the conditions to which he is subjected by that designation. The cases are summarized chronologically by filing date as follows:

On December 13, 2018, Saunders brought suit challenging conditions at MOCC under § 1983 in *Saunders v. Kummer et al.*, No. 2:18-cv-01514 (Apr. 26, 2021), claiming that he was pepper sprayed by correctional officers in violation of his constitutional rights. The case was later dismissed due to Saunders's failure to exhaust his administrative remedies.

He next filed suit on March 26, 2020, after an incident in which he and other inmates were kept confined in cages outside in the cold for hours. *Saunders v. Frame et al.*, No. 2:20-cv-00220 (Sept. 17, 2020). This case was later dismissed after the parties reached a settlement.

On February 1, 2021, Saunders initiated *Saunders v. Moore et al.*, No. 5:21-cv-00080 (Sept. 28, 2021), a § 1983 complaint, attacking the administrative remedy process at the Southern Regional Jail, as well as his designation to ad seg on due process grounds. ECF Nos. 2, 12-1. District Judge Frank W. Volk adopted Magistrate Judge Omar J. Aboulhosn's findings that Saunders lacks a liberty interest "in remaining free from segregation or in the fact of his confinement in segregation" and his rights were not implicated by any failure of jail staff to follow their own policies and directives and dismissed the suit. ECF Nos. 17 at 9, 20. Saunders did not appeal this ruling.

7

On February 10, 2021, Saunders filed a habeas petition in *Saunders v. Ames*, No. 2:21-cv-00102, contending that his rights under the Double Jeopardy clause were implicated by his continued prosecution on an indictment after the state court judge declared a mistrial, a matter which remains pending.

On March 8, 2021, Saunders filed suit under § 1983 to challenge his designation to ad seg at MOCC as a denial of his right to due process on the basis that he was not allowed to present his preferred witnesses or evidence at his disciplinary hearing and is subject to restrictive conditions. *Saunders v. Frame et al.*, No. 2:21-cv-00157. Defendants in that matter have not yet been served and the action remains pending.

On April 19, 2021, Saunders filed a § 1983 claim complaining that prison officials tampered with his legal mail and did not allow him to access phones at times when his young daughter would be available to speak with him, a matter which remains pending. *Saunders v. Jividen et al.*, 2:21-cv-00250.

On April 22, 2021, a mere three days after filing his last lawsuit, Saunders instituted another action under § 1983, this time complaining that property was removed from his cell while he was briefly housed at the Southern Regional Jail during the pendency of a criminal matter and challenging the unsanitary conditions at MOCC. *Saunders v. Wilson et al.*, 2:21-cv-00261. This action remains pending.

On May 14, 2021, Saunders filed yet another suit under § 1983, complaining that he lacked access to a clock while in solitary confinement, preventing him from praying on time. *Saunders v. Clifford et al.*, 2:21-cv-00299. This matter remains pending.

On June 1, 2021, Saunders filed suit under § 1983, complaining that he was retaliated against after getting into a physical alternation with a correctional officer. *Saunders v. Burton et al.*, 5:21-cv-00322. This matter remains pending.

In addition to his federal claims, on April 22, 2021, Saunders filed a habeas petition under state law in the SCAWV, claiming that MOCC officials failed to follow their own policy directives in designating him to ad seg, seeking writs of habeas corpus and mandamus requiring prison staff to follow policies and also allow him access to his TV and other privileges. (ECF No. 8-2). Apparently, the SCAWV has not yet rendered its disposition of Saunders's state habeas petition.

## II. Standard of Review

Respondent moves to dismiss Saunders's § 2241 under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 8). A motion under Rule 12(b)(6) addresses whether the plaintiff's complaint includes sufficient factual allegations to state a claim upon which relief may be granted. A complaint fails to state a claim when, viewing the factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). The Supreme Court further explained the "plausibility" standard in *Iqbal*, stating:

> The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 1955) (internal citations omitted). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679. Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–158 (2nd Cir. 2007)).

In deciding a Rule 12(b)(6) motion, the court must accept as true all of the factual allegations contained in the petition. *Erickson v. Pardus,* 551 U.S. 89 (2007). Nonetheless, the court is not required to accept the legitimacy of legal conclusions. *Iqbal,* 556 U.S. at 678. To survive a motion to dismiss, a petition must plead both a factual and legal basis for relief. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a facially plausible complaint).

As a general rule, courts are required to liberally construe *pro se* filings, such as the one filed in this action. *Erickson,* 551 U.S. at 94. However, even under this less stringent standard, the petition still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion,* 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). A Rule 12(b)(6) motion should be granted only "'where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.,* 707 F.3d 1114, 1122 (9th Cir.2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1102 (9th Cir. 2008)).

### III. <u>Discussion</u>

#### *A. Exhaustion of state court remedies*

The most glaring deficiency in Saunders's petition is his failure to exhaust his state court remedies with respect to his claims. Respondent argues that Saunders's petition should be dismissed because he did not first allow the state to pass on the issues he now raises. (ECF No. 9 at 5). Respondent is correct. Before a state prisoner can bring a habeas petition in federal court, the prisoner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "The rule of exhaustion in federal habeas corpus actions is rooted in considerations of federal-state comity." *Preiser v. Rodriguez*, 411 U.S. 475, 491, (1973); *see also Rose v. Lundy*, 455 U.S. 509, 522 (1982).

In order to comply with the exhaustion requirement, a petitioner must have offered the state an adequate "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation omitted). While it is unnecessary to cite "book and verse on the federal constitution," the petitioner must first present the "substance of a federal habeas corpus claim" to the state courts. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971). Thus, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (internal citations omitted). In West Virginia, exhaustion of a claim cognizable in a habeas petition is accomplished in one of three ways: by (1) presenting the federal constitutional issues directly to the SCAWV through an appeal of the conviction or sentence; (2) filing a petition for a writ of habeas corpus in the appropriate circuit court followed by an appeal of the judgment to the SCAWV, if the result is adverse; or (3) filing a petition for a writ of habeas corpus under the SCAWV's original jurisdiction and receiving a dismissal with

11

prejudice. *Moore v. Kirby*, 879 F. Supp. 592, 593 (S.D.W. Va. 1995); *see also McDaniel v. Holland*, 631 F. Supp. 1544, 1545-46 (S.D.W. Va. 1986); *and Gardner v. Plumley*, No. 2:12-cv-03386, 2013 WL 5999041, at *5 (S.D.W. Va. Nov. 12, 2013).

While Saunders asserts that he has filed grievances and "appealed to the highest available," (ECF No. 12 at 2), completion of the administrative remedy process within the prison does not satisfy the exhaustion requirement because Saunders still has "the right under the law of the State to raise, by [an] available procedure, the question presented." *See* § 2254(c). He has not provided any reason why the state habeas petition process is unavailable to him, and indeed he recently availed himself of that option. As Respondent notes, Saunders filed a state habeas petition challenging his placement in ad seg less than a month before filing the instant petition. (ECF No. 8-2). While Saunders only vaguely alludes to federal legal standards in his state petition, he is clearly challenging the same program and the same decisions in his petition before this Court. This situation illustrates the propriety of the exhaustion requirement. By presenting simultaneous challenges in both state and federal court, Saunders creates the potential for conflicting rulings.

Saunders contends that he need not present his federal constitutional issues to the state court because he is alleging federal, rather than state, violations. (ECF No. 12 at 2). Saunders is incorrect. State courts "have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990) (internal quotation marks and citations omitted). Federal courts have exclusive jurisdiction over federal legal questions only when Congress "affirmatively divest[s] state courts of their presumptively concurrent jurisdiction." *Id.* (internal citations omitted). Saunders is not excused from his obligation to present his claims to the state court on the basis that the rights he asserts

12

are derived from federal law.

Saunders maintains that he is seeking relief under § 2241 rather than § 2254 because he is not challenging a state criminal conviction, and, ostensibly, is not required to exhaust his state court remedies as provided by § 2254(c). (ECF No. 12 at 2). Saunders is incorrect as to the scope of § 2254 and furthermore his reasoning is wholly flawed. Section 2254 governs habeas actions brought by petitioners in state custody asserting violation of their federal rights who wish to challenge the judgment of a state court, whether the judgment be from a direct appeal of a criminal conviction or a judgment on a state habeas petition. While it is true that no state court judgment is at issue here, that is only *because* Saunders has not exhausted his state court remedies; he cannot sidestep his obligation to allow the state court a full review of his claim by filing it under § 2241 rather than § 2254. Exhaustion of state court remedies is required for a state prisoner seeking *habeas* relief whether such relief is sought pursuant to § 2241 or § 2254. *See Dickerson v. Louisiana*, 816 F.2d 220, 225 (5th Cir.1987), cert. denied, 484 U.S. 956 (1987) ("[F]ederal courts should abstain from the exercise of ... jurisdiction if the issues raised in the [§ 2241] petition may be resolved either by trial on the merits in the state court or by other state procedures available to the petitioner."); *Ali v. Waid*, No. CIV.A. 5:08CV179, 2009 WL 1872972, at *2 (N.D.W. Va. June 29, 2009) (holding that state prisoners must exhaust state remedies whether claims are raised under § 2241 or § 2254); *Wood v. Olejasz*, No. 1:21CV103, 2021 WL 4450270, at *2 (N.D.W. Va. Aug. 10, 2021), *report and recommendation adopted*, No. 1:21-CV-103, 2021 WL 4448936 (N.D.W. Va. Sept. 28, 2021) ("Although § 2241 contains no express reference to exhaustion of state remedies, courts have held that exhaustion is necessary prior to filing a § 2241 petition in federal court."); *Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484 (1973); *Stroupe*

*v. United States*, No. 1:21-CV-00224-MR, 2021 WL 4167279 (W.D.N.C. Sept. 13, 2021).

Saunders has provided no evidence of special circumstances that warrant deviation from the general rule requiring exhaustion of state court remedies. *Galloway v. Stephens*, 510 F. Supp. 840, 846 (M.D.N.C. Mar. 25, 1981) ("When state court remedies have not been exhausted, absent special circumstances, a federal habeas court may not retain the case on its docket, pending exhaustion, but should dismiss the petition."). Accordingly, the undersigned **FINDS** that Saunders's habeas petition should be dismissed for failure to exhaust state court remedies prior to filing this action.

### B. *Availability of remedy under § 2241*

Clearly, the Court cannot grant Saunders relief in this matter as he has not exhausted state court remedies. However, Respondent also argues that even if Saunders had properly presented and exhausted his claims before the state court, he cannot challenge the constitutionality of MOCC policies in a § 2241 petition and must instead bring suit under § 1983. (ECF No. 9 at 6–7).

Habeas corpus is the appropriate and exclusive remedy for state prisoners to attack the validity or duration of their confinement. *Todd v. Baskerville,* 712 F.2d 70, 71 (4th Cir. 1983). However, when a challenge is made to the conditions of confinement, rather than to the fact of confinement, the remedy is under 42 U.S.C. § 1983. *Preiser v. Rodriguez,* 411 U.S. 475 (1973); *see also Muhammad v. Close,* 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus … requests for relief turning on circumstances of confinement may be presented in a § 1983 action").

Respondent is correct that a general challenge to the validity of a disciplinary scheme, as Saunders raises in Ground One, is not a proper subject for habeas review. A

declaration that the QOL program and the conditions created by it are unconstitutional, as Saunders seeks, goes beyond the scope of § 2241 and is not cognizable in this habeas action. *See Wilborn v. Mansukhani*, 795 F. App'x 157 (4th Cir. 2019) (noting a circuit split regarding whether conditions of confinement claims are cognizable in habeas proceedings; declining to extend the scope of § 2241 to conditions of confinement); *Rodriguez v. Ratledge*, 715 F. App'x 261 (4th Cir. 2017) (deciding conditions of confinement claims are not cognizable in § 2241 petitions); *see also Brown v. Zeigler*, No. 5:12-CV-01178, 2013 WL 4500473, at *6 (S.D.W. Va. Aug. 20, 2013), *aff'd,* 554 F. App'x 235 (4th Cir. 2014) (holding that federal petitioner's challenge to continued placement in the Special Housing Unit must be brought in civil rights action).

In Grounds Two and Three, Saunders challenges his continued designation to ad seg without meaningful review and his initial designation to ad seg on the basis that he was denied due process. (ECF No. 1 at 14–19). He contends that his confinement in ad seg prevents him from being granted parole. (*Id.* at 18–19). The Fourth Circuit has held that "there is federal habeas corpus jurisdiction over the complaint of a federal prisoner who is challenging not the validity of his original conviction, but the imposition of segregated confinement without elementary procedural due process and without just cause." *McNair v. McCune*, 527 F.2d 874, 875 (4th Cir. 1975); *see also Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) ("If the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, *or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation*—then *habeas corpus* is his remedy.") (emphasis added); *Streeter v. Hopper*, 618 F.2d 1178, 1181 (5th Cir. 1980) (stating claim seeking release from imposition of

15

administrative segregation without due process is cognizable in habeas). Although the undersigned makes no comment as to the likelihood of success of such a claim, Saunders's due process claims would be cognizable in a federal habeas petition. *McNair*, 527 F.2d at 875.

The Due Process Clause of the Fourteenth Amendment mandates that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Imprisonment for a crime does not completely divest a person of due process protections. *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974). "In order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (markings omitted). Although the "Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement … a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations." *Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005) (citations omitted). "'States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless *imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*.'" *Beverati,* 120 F.3d at 502 (quoting *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)) (emphasis in original). The question becomes whether Saunders's "confinement in administrative segregation impose[s] such an atypical hardship on [him] vis a vis ordinary prison life that [he] possesse[s] a liberty interest in avoiding it." *Id.* at 502-03.

16

This Court need not answer that question as the state court must first be allowed to fully address the issue. If Saunders chooses to pursue and exhaust his remedies in state court, he may be allowed to raise a claim regarding his designation to ad seg on the basis that such designation violates his due process rights. As aforementioned, to the extent he challenges the conditions of confinement in ad seg, his claim must be raised in an action under § 1983, and he has already done so.[1] Accordingly, the undersigned **FINDS** that Saunders may challenge his designation to ad seg on due process grounds in a federal habeas petition, but nevertheless **FINDS** his claim, which is currently pending before the WVSCA, is not properly before the Court at this time and must be dismissed.

## IV. Proposal and Recommendations

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (ECF No. 1), be **DENIED;** that Respondent's request for summary judgment, (ECF No. 8), be **GRANTED;** and that this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the

---

[1] Saunders filed a § 1983 suit challenging his designation to ad seg partially on due process grounds in a manner extremely similar to the instant petition. That case remains pending in this Court. *Saunders v. Frame et al.*, No. 2:21-cv-00157.

Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Goodwin, and Magistrate Judge Eifert.

    The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Petitioner and to counsel of record.

    **FILED:** October 25, 2021

Cheryl A. Eifert
United States Magistrate Judge